*Lancaster.*

## WOLF *against* CAROTHERS.

*Saturday.*
May 31.

### IN ERROR.

On a feigned issue between creditors, to try the validity of a bond, given by an insolvent, the obligor is a good witness to prove that it was *bona fide,* and for a valuable consideration.
*Query,* whether such obligor could, on cross examination, be compelled to answer questions tending to shew he was guilty of fraud, in relation to the bond.
The declarations of such obligor made in the absence of the obligee, are not evidence to destroy the bond.

ERROR to the Common Pleas of *Dauphin* county.

THIS was a feigned issue, directed by the Court of Common Pleas of *Dauphin* county, in which *John Carothers* was plaintiff and *Henry Wolf* defendant; the object being to try whether a bond, given by *David Peiffer* to his father, *Jacob Peiffer,* a short time before *David* became insolvent, was *bona fide,* and for a valuable consideration. The dispute was between the creditors of *David Peiffer.* It appeared that he had been discharged under the insolvent law of 26th *March,* 1814.

On the trial of the issue, the defendant offered *David Peiffer,* and *Mary,* his wife, as witnesses in support of the bond. The plaintiff objected to them, and they were rejected by the Court. The defendant tendered a bill of exceptions.

The plaintiffs afterwards offered in evidence the declara-

tions of *David Peiffer*, in the absence, and without the know-
ledge of *Jacob Peiffer*, to invalidate the bond. To this evi-
dence the defendant objected; but it was admitted by the
Court, who sealed another bill of exceptions.

*Godwin* and *Fisher*, for the plaintiff in error.

1. The question is, whether the obligor in a bond is a good
witness to prove that the bond was given *bona fide*, and for a
valuable consideration, in an issue between the creditors, to try
the validity of the bond. The obligor, *David Peiffer*, had
no interest whatever in the event of this suit, and made no
objection to being sworn. There is a case in 2 *Day's Rep.*
126, and another in 11 *Johns.* 185, which are precisely in
point. They also cited *Phill. Ev.* 36, *note a*.

2. The declarations of one, who is not party to a suit, are
not evidence to affect those interested. 5 *Binn.* 109. 4 *Mass.
Rep.* 702. *Phill. Ev.* 167. 2 *Binn.* 144.

*Elder* and *Buchanan*, contra.

1. The issue, in this case, turned on the fraud of *David
Peiffer's* bond. The party to the fraud is not a good witness
to establish the bond. The subscribing witnesses ought to
have been called. It appears that *David Peiffer* had been
discharged by the insolvent act of 26th *March*, 1814; and
was therefore liable, if he had executed a writing to defraud
his creditors, to forfeiture of money and imprisonment. He
could not have been compelled to answer any questions, put
on behalf of the plaintiff, tending to prove that he was con-
cerned in a fraudulent transaction.

2. The declarations of a party to the fraud are good evi-
dence.

Tilghman C. J. (After stating the first exception.) I
cannot see, on what principle these witnesses were reject-
ed. *David Peiffer* had no *immediate* interest in the event
of the issue, and, if we are to look to *remote* interest,
the establishing of the bond was against his interest. Hav-
ing assigned his estate to his creditors under the insolvent
act, the surplus, after payment of debts, (if any) would be-
long to him; but the establishment of this debt, by increas-
ing the amount of the debts, diminished the surplus. But
it is said, that in case *David Peiffer* had committed a fraud
against his creditors, he was punishable by the act of 26th

Vol. III.—H h

*March*, 1814, and therefore, if he had been sworn as a witness, he could not have been compelled to answer any thing, which might tend to his own conviction. There is an easy answer to this objection. *David Peiffer* was *willing* to testify, and the objection came from another quarter. What protection the Court would have afforded him, after consenting to testify, against the cross-examination of the plaintiff, is another question, not necessary to be now decided. I am, therefore, of opinion, that he was a competent witness.

There is another exception in this cause. After rejection of the evidence of *David Peiffer*, the Court admitted evidence of his *declarations*, in order to destroy the bond. This evidence, appears to me, to have been improper. *David Peiffer* was no party to the suit; his *declarations*, therefore, could not be evidence to destroy his own bond. No obligee is safe, if declarations of the obligor can affect him. If *David Peiffer* was disinterested, the plaintiff should have examined him on oath; the defendant had a right to insist on his oath, if he was heard at all. Being of opinion, then, that there was no objection to his being examined on oath, it follows, that I must also be of opinion, that his declarations without oath, were not evidence.

On both exceptions, my opinion is in favour of the plaintiff in error. Judgment to be reversed, and a *venire facias de novo* awarded.

GIBSON J. To exclude a witness, it is necessary, that he should have a vested interest, not in the question, but in the event of the suit. It must be an interest, that the judgment in the cause would operate upon; for if by the event, he would neither acquire or lose a right, nor incur a responsibility, which the law recognises, he is competent. Every other kind of interest goes to credibility. Here, if the jury had found in favour of the fairness of this transaction, the witness would not by that have acquired a title to any part of the contents of the bond; for though it might be fraudulent and void against creditors, it would be good between the parties. Take it then, the whole was a mere device to cover the property of the witness from his creditors; still, it rested with the generosity of his father, whether he should, in case the fraud were successful, obtain any part of it. This, therefore, is an interest depending upon honour, which

goes to credibility, and not upon a legal title, which goes to competency. The witness, however, was called to swear against his interest, being precisely in the situation of a bankrupt who is competent to decrease the fund. It is said, that being an insolvent debtor, he had a direct interest in proving the transaction to have been fair and honest, being liable to punishment under the insolvent laws in case it should be found he had committed perjury, or have been guilty of fraud and collusion in obtaining his discharge. It is sufficient to answer, that the verdict could not be given in evidence against him, in the trial of an indictment founded on those laws. As to another objection, that on account of this responsibility, he could not be forced to disclose matter that would subject him to punishment, and so would be a witness entirely on one side, it is to be observed, that it does not follow, that because a witness cannot be examined to every matter, he shall be examined to none. It is argued, that the issue here is to try a question of fraud, and, therefore, to permit a party to it, to bolster up the transaction with his own evidence in every case, would be to *insure* its success. But, that assumes the very question that was to be tried. *Non constat*, that there *was* any fraud, and it will not be presumed without evidence. With regard to the declarations of the witness, it is too clear for argument, they were not admissible evidence. I am, therefore, of opinion, the judgment should be reversed.

DUNCAN J. This was a feigned issue to try the validity of a bond, given by *David Peiffer* to *Jacob Peiffer*, his father. It may be collected from the record, that the nature of this inquiry was this :—*David Peiffer*, who had obtained the benefit of the acts of insolvency, was much in debt, and gave this bond to his father. Several judgments had been obtained against him. His property was sold by the sheriff, *Henry Wolf*. *John Carothers* had obtained a judgment subsequent to the judgment of *Jacob Peiffer*. The money arising from the sale of the land was in the sheriff's hands, claimed by *Jacob Peiffer* on his prior judgment, and the claim resisted by *John Carothers* on the ground of fraud, in the transaction between *Jacob* and *David Peiffer*, and that this bond given to *Jacob*, was fraudulent and without consideration. The issue was directed to try this question of fraud. *David Peiffer* and

1817.

WOLF
*v.*
CAROTHERS.

his wife were offered as witnesses, to prove the consideration of the bond given to *Jacob*, and the fairness of the transaction. They were rejected by the Court, and on this is founded the first bill of exceptions. I cannot discover any legal principle, on which they could be rejected. *David* was not interested. He was offered to testify against his own interest. He was no party to the suit. He had no interest in establishing the debt of his father. It was directly contrary to his own interest. True, his character was involved in this inquiry ; but this cannot form an objection to his competency. It may tend greatly to diminish his credit, but did not render him incompetent. It must be supported then on the ground of some legal policy. That a man shall not be permitted to invalidate a negotiable instrument to which he is a party, is recognised as the law of *Pennsylvania*. But this does not extend to the case of bonds. *Baring* v. *Shippen*, 2 *Binn.* 154. In this case it is established, that the assignor of a bond was a competent witness to prove, that it was fraudulently obtained. If he could be received in that case, to defeat the instrument, what is to exclude him, in this case, from giving testimony to support it? There appears to me neither reason nor policy in the exclusion. He was not interested. He was not infamous. He was not to be excluded on any principle of the common law. In that case, the Chief Justice expressed a doubt of the power of the Court to set aside the principles of the common law on any motives of policy. In *Hill* v. *Payson*, 3 *Mass. Rep.* 559, the objection to the witness was confined to the case of negotiable instruments ; to invalidate which, he shall not be received as a witness. The very reason in this exception to the general competency proves, that it does not extend to this case. It is, that a man shall not be permitted to invalidate the security to which he has given currency by his signature. But it establishes the converse ; that is, if he has no interest to support by it, he may be received to validate it. After the rejection of these witnesses, the defendant in error offered to give evidence of the declarations of *David Peiffer*, to invalidate the bond. These declarations are admitted to have been made in the absence of *Jacob Peiffer*. They were received in evidence, and that forms the second exception. These declarations appear to me to be inadmissible. The declarations of an obligor to destroy a

1817.

WOLF
*v.*
CAROTHERS.

bond given by him, never can be received. No proposition can be clearer than this. The declaration of a party to a sale or transfer, going to destroy and take away the vested right of another, cannot *ex post facto* work that consequence, nor be regarded as evidence against the vendee or assignee. *Phœnix* v. *The assignees of Ingraham,* 5 *Johns.* 426. So in the case cited by the counsel for the plaintiff in error. 2 *Day.* 126. That case bears materially on both these bills of exceptions. The witnesses, *Peiffer* and wife, were in Court. They were excluded by the defendant in error from stating the transaction on oath. He then opposed their testimony, and has availed himself of their declarations when out of Court, and not under oath. This rejection of the witnesses appears to me to be erroneous; and the receiving evidence of the declarations of one who has given an obligation to destroy his own obligation, seems to be contrary to all established rules of evidence.

Judgment reversed, and a *venire facias de novo* awarded.